UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LEON KORNEGAY,

                              Plaintiff,

                                                                                                 DECISION AND ORDER

                                                                                                06-CV-6153L

                      v.

THE STATE OF NEW YORK, et al.,

                              Defendants.
_____

       Plaintiff, Leon Kornegay, appearing *pro se*, commenced this action under 42 U.S.C. § 1983. Plaintiff, an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), alleges that his constitutional rights have been violated in a number of respects by defendants, all of whom were at all relevant times officials or employees of DOCS.

       The amended complaint names six individual defendants (one of whom is identified only as "Sgt. C"), as well as "John Doe etc.," "any supervisory personnel," the State of New York, the County of Chemung, Elmira Correctional Facility, and the New York State Department of Health. Four of the defendants–Correction Officer ("C.O.") Patrick Bryan, C.O. John Dandrea, DOCS Commissioner Glenn Goord, and Deputy Commissioner/Chief Medical Officer Lester Wright–have

been served and have appeared in this action.[1]  Those four defendants ("moving defendants") have moved for summary judgment dismissing the complaint.  For the reasons that follow, defendants' motion is granted in part and denied in part.

**DISCUSSION**

**I. Goord and Wright**

Defendants Goord and Wright move for summary judgment on the ground that plaintiff has failed to demonstrate their personal involvement in the alleged constitutional violations.  A plaintiff asserting a § 1983 claim against a supervisory official in his individual capacity must allege that the supervisor was personally involved in the violation of his constitutional rights.  *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 254 (2d Cir. 2001); *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001).  That requirement may be satisfied by alleging facts showing that:  (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberated indifference to others' rights by failing to act on information indicated that constitutional acts were

---

[1] Goord retired from DOCS after this action was commenced.  All references to defendants' positions or titles are to those they held at the time of the relevant events.

occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).

In the case at bar, plaintiff's claims arise out of two separate incidents in which he alleges that he was subject to excessive force by defendants Bryan and Dandrea: a March 7, 2005 incident involving C.O. Bryan, and a November 4, 2005 incident involving C.O. Dandrea.

The amended complaint sets forth virtually no factual allegations about either Goord or Wright. At his deposition in this case, plaintiff testified that he wrote letters to Goord about some of the matters involved in this case, and plaintiff was apparently not satisfied with the responses that he received. Plaintiff testified, "I don't know if [Goord] himself read [plaintiff's letters] or his secretary [read them], but I wrote complaints to him." Dkt. #51-4 at 148. Plaintiff indicated that he received some responses to his letters signed by DOCS officials from Goord's office, but that he had gotten no responses from Goord himself. *Id.* at 152.

When asked whether plaintiff was "suing [Goord] as the biggest or highest level supervisor in" DOCS, plaintiff responded, "Yes ... ." He added that he believed that "[c]ertain 1983 cases were dismissed for ... failure of the plaintiff to include any supervisory personnel in the body of the complaint itself. So I included him." *Id.* at 153.

Plaintiff stated that he had written letters to Wright as well. Plaintiff indicated that those letters concerned some difficulties that plaintiff was having in obtaining some of his own medical records, but he did not state that Wright himself ever responded to plaintiff's letters, or that Wright had done anything directly related to plaintiff's claims. Plaintiff apparently named Wright as a

defendant because of plaintiff's belief that Wright "was the overall health commissioner of the whole State of New York ... ." *Id.*

Those allegations are not enough to establish Goord's or Wright's personal involvement in any of the alleged constitutional deprivations here. For one thing, it is clear that defendants' supervisory positions alone are not enough to render them liable for damages in a § 1983 action. *See Allah v. Poole*, 506 F.Supp.2d 174, 193 (W.D.N.Y. 2007) (defendants' "supervisory status alone is not enough to establish their personal involvement, since the doctrine of *respondeat superior* does not apply to § 1983 cases") (citing *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir. 1989)). *See also Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) ("The bare fact that [the defendant] occupies a high position in the New York prison hierarchy is insufficient to sustain [plaintiff's] claim").

Nor can Goord or Wright be held liable simply because plaintiff wrote letters or sent complaints to them. "The general rule is that if an official receives a letter from an inmate and passes it on to a subordinate for response or investigation, the official will not be deemed personally involved with respect to the subject matter of the letter." *Rivera v. Fischer*, ___ F.Supp.2d ___, 2009 WL 2981876, at *2 (W.D.N.Y. 2009) (citing *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997)). Since plaintiff has shown no more than that, his claims against Goord and Wright must be dismissed.

**II. Bryan**

Defendant Bryan also contends that plaintiff has failed to present evidence demonstrating his personal involvement in the alleged violations. The gist of Bryan's argument is that by plaintiff's

own admission, he does not know whether Bryan or some other C.O. is the person who allegedly assaulted plaintiff on March 7, 2005.

Plaintiff alleges that on that date, Bryan and at least one other C.O. (plaintiff's testimony on the exact number is unclear) came to break up a fight between plaintiff and another inmate. According to plaintiff, the other inmate had been using a crutch as a weapon, swinging it at plaintiff like a baseball bat. At one point, after the fight had stopped, the officers directed plaintiff to turn and face the wall. Plaintiff alleges that as he was facing the wall, with his back to the officers, one of the officers took the crutch and rammed the small end of it into plaintiff's lower back. Plaintiff testified at his deposition, "I don't know if it was as hard as he could but with enough force that I still feel pain in my back to this day." Dkt. #51-4 at 120.

Plaintiff testified that after one of the C.O.s rammed him in the back with the crutch, the crutch "dropped on the floor." *Id.* at 115. Plaintiff stated that he then "turned around to look at the officers, and they told [him] to turn around, and [he] faced the wall again." At that point, according to plaintiff, one of the officers picked up the crutch and again rammed it into plaintiff's lower back. *Id.* at 116.

Following this incident, Bryan issued a misbehavior report against plaintiff. During his deposition testimony, plaintiff stated, "Officer Bryan, just because he wrote that specific ticket, you know, doesn't mean that he was the officer present and that assaulted me at that specific incident." Dkt. #51-4 at 100. When asked to clarify that statement, plaintiff repeated, "[J]ust because Officer Bryan was the one who wrote the ticket doesn't necessarily mean that Officer Bryan was the officer who physically put his hands on me." *Id.* at 101.

Apparently what plaintiff meant was that because his back was to the officers both times he was struck, he was unable to see which officer hit him with the crutch.[2] Bryan himself does not appear to deny that he was present at the scene of this incident, although he does deny striking plaintiff. Bryan's answer to the amended complaint denies plaintiff's allegation of excessive force, and Bryan denies striking plaintiff with a crutch, but he does not deny that he was there when the officers broke up the fight between plaintiff and the other inmate, or that he was the one who issued the misbehavior report against plaintiff. *See* Dkt. #23 ¶ 12. In support of his motion, however, Bryan contends that because plaintiff was unable to identify Bryan as the officer who rammed him with the crutch, plaintiff has failed to show Bryan's personal involvement in the use of excessive force.

There is authority, however, that in the context of an excessive force claim, the plaintiff's "'inability to positively identify those who allegedly violated his rights is not *per se* fatal to his claims.' This is especially true where the acts complained of by the plaintiff, if true, ... are likely to have prevented plaintiff from identifying which of [several] defendant officers specifically engaged in the bad acts." *Shankle v. Andreone*, No. 06-CV-487, 2009 WL 3111761, at *5 (E.D.N.Y. Sept. 25, 2009) (quoting *Davis v. Callaway*, No. 3:05-CV-00127, 2007 WL 1079988, at *8 (D.Conn. April 9, 2007)). In *Shankle*, for example, the court denied the defendant police officers' motion for

---

[2] It appears from reading plaintiff's deposition testimony that he was generally somewhat evasive when asked to identify or describe the officers, seemingly because he was afraid that he might "describe the wrong individual," Dkt. #51-4 at 102, or that it might weaken his case if his description was later shown to be inaccurate. For example, plaintiff told defense counsel that he refused "to say whether [Bryan's shirt] was long-sleeved or short-sleeved because I don't want to err and tell you the wrong thing." *Id.* at 98. He also described the officers as "[b]etween five-seven and six-five" in height. *Id.* at 107. And when asked whether the officers were Caucasian, plaintiff responded, "At that particular time, yes." *Id.* at 105.

summary judgment on the plaintiff's Fourth Amendment excessive force claim, where the plaintiff stated that he was unable to allege which officer committed each act because the plaintiff was face down on the ground during the arrest. *Id.*

Moreover, even if Bryan was not the officer who allegedly struck plaintiff, he may have had a duty to intervene, particularly if plaintiff was struck more than once, as he alleges. "A corrections worker who, while not participating in an assault upon an inmate, is present while it occurs may nonetheless bear responsibility for any resulting constitutional deprivation. It is well-established that a law enforcement official has an affirmative duty to intervene on behalf of an individual whose constitutional rights are being violated in his presence by other officers." *Green v. Gunn*, No. 06-CV-6248, 2009 WL 1809932, at *5 (W.D.N.Y. June 24, 2009) (quoting *Cicio v. Graham*, No. 08-CV-534, 2009 WL 537534, at *5 (N.D.N.Y. Mar. 3, 2009)). *See also Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) ("Failure to intercede results in [section 1983] liability where an officer observes excessive force being used or has reason to know that it will be"); *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000) (an officer who had "a realistic opportunity to step forward and prevent a fellow officer from violating the plaintiff's rights through excessive force but failed to do so" may be held liable).

In order to establish liability on the part of a defendant for failing to intervene, a plaintiff must prove that he was subjected to excessive force by someone other than the defendant, and that the defendant (1) possessed actual knowledge of a fellow officer's use of excessive force; (2) had a realistic opportunity to intervene and prevent the harm from occurring or continuing; and (3) disregarded that risk by intentionally refusing or failing to take reasonable measures to prevent or

stop the use of excessive force. *Green*, 2009 WL 1809932, at *5; *Cicio*, 2009 WL 537534, at *5); *Marsh v. Bellinger*, No. 06-CV-464, 2009 WL 3429775, at *6 (W.D.N.Y. Oct. 19, 2009).

In the case at bar, then, even if Bryan did not himself strike plaintiff, he might nonetheless be liable if he had an opportunity to intervene and failed to do so. Again, it is noteworthy in that regard that plaintiff alleges that he was stuck twice. According to plaintiff, an officer rammed the crutch into his back, and apparently dropped the crutch to the floor. Plaintiff then turned around to look at the officers, was told to turn back toward the wall, and after he did so he was struck again. Assuming those allegations to be true, it would mean that one of the officers had picked the crutch up off the floor and rammed it into plaintiff's back a second time. If that is what occurred, then a factfinder might conclude that (assuming that Bryan was not the officer who struck plaintiff) Bryan knew that plaintiff was about to be hit in the back a second time, but did nothing to prevent it or that he jointly engaged in the challenged conduct with another officer or officers.[3]

The record before me is incomplete as to this matter, however. As stated, Bryan's motion is based on the alleged inadequacy of plaintiff's allegations. There does not appear to be any affidavit or testimony from Bryan himself, or from any other witnesses or participants, about this incident. Since the Court is obligated to assume the truth of plaintiff's allegations in deciding defendants' motion, I conclude, on the record now before me, that there are issues of fact concerning Bryan's involvement in the alleged Eighth Amendment violation, and that Bryan is not entitled to summary judgment at this juncture. *See Miller*, 220 F.3d at 495 (concluding that plaintiff's failure

---

[3]Plaintiff did articulate such a claim at his deposition, stating that an "officer rammed me in the back with the crutch at least two times, and the other officers that were present failed to stop the use of unnecessary excessive force by other officers ... ." Dkt. #51-4 at 119.

to identify which of two officers hit him, because he was face down, was not fatal to his § 1983 claim, and stating that "If, as we are required to do at this point in the case, Miller's allegations are taken as true, whichever officer was not directly responsible for the beating was idly standing by. If Miller can show at trial that an officer attacked him while another officer ignored a reasonable opportunity to intervene, he can recover"); *Shankle*, 2009 WL 3111761, at *6 (While the question of whether the ranking officer would have had an opportunity to intercede during the incident alleged in this case ... may be a close one, given that plaintiff has testified that all three officers were involved, the court cannot grant summary judgment based on a lack of personal involvement or inability to intercede") (citation omitted); *Jeffreys v. Rossi*, 275 F.Supp.2d 463, 474 (S.D.N.Y. 2003) ("A plaintiff need not establish who, among a group of officers, directly participated in the attack and who failed to intervene"), *aff'd*, 426 F.3d 549 (2d Cir. 2005).

**III. Dandrea**

In the complaint, plaintiff alleges, "On about [sic] November 4th 2005 officer Dandrea tried to provoke me into a physical confrontation by pushing me with unnecessary force, assulting [sic] me and screaming in my face to further his attempt to provoke me into a physical confrontation." Dkt. #15 at 7. At his deposition, plaintiff testified that on that date, he was returning to his cell from the mess hall when Dandrea pushed him, and that plaintiff "went down to the floor and put [his] hand down to catch [his] balance." Plaintiff testified that he then stood up and Dandrea began screaming in plaintiff's face. Dkt. #51-4 at 138.

When asked to describe the manner in which Dandrea pushed him, plaintiff stated that the push was made with "enough force to knock [plaintiff] off balance to where [he] had to put [his] hands down to catch [his] balance." *Id.* at 142. Plaintiff compared Dandrea's act to "when you hit somebody in football but not a tackle. When you ... hit him with enough force and try to knock him backwards and try to knock someone off his feet. And that's exactly what he did." *Id.* at 143. When asked if Dandrea "shoved his upper body into [plaintiff's] body," plaintiff answered, "That's correct and with enough force ... that made [plaintiff] lose [his] balance because that was totally unexpected." *Id.*

Asked whether he was injured as a result of Dandrea's push, plaintiff responded, "I wouldn't say necessarily so much physically injured to where he broke anything on me or he hit me with a weapon. I wouldn't say that necessarily but I would say he added to my mental injury." *Id.* at 145-46. Plaintiff added, "I wasn't physically hurt by his actions but I mentally was hurt by his actions." *Id.* at 146.

Dandrea contends that these allegations fail to state an Eighth Amendment claim against him. I agree.

> To establish a constitutional violation under the Eighth Amendment a plaintiff must meet both an objective and a subjective requirement. To satisfy the objective requirement the plaintiff must prove that the violation is sufficiently serious or harmful enough by objective standards. The objective component is context specific, turning upon contemporary standards of decency. Hence, a *de minimis* use of force will rarely be sufficiently serious or harmful enough. In other words, not every push or shove, even if it may later seem unnecessary, violates a prisoner's constitutional rights.

*Baskerville v. Mulvaney*, 411 F.3d 45, 47 (2d Cir. 2005).

The Second Circuit has made clear, however, that such a claim should not be dismissed simply because the inmate did not suffer any lasting physical injury: "where a prisoner's allegations and evidentiary proffers could reasonably, if credited, allow a rational factfinder to find that corrections officers used force maliciously and sadistically, our Court has reversed summary dismissals of Eighth Amendment claims of excessive force even where the plaintiff's evidence of injury was slight and the proof of excessive force was weak." *Wright v. Goord*, 554 F.3d 255, 270 (2d Cir. 2009).

On the facts before me here, however, I conclude as a matter of law that the force used against plaintiff was no more than *de minimis*, and that no rational trier of fact could conclude that plaintiff's Eighth Amendment rights were violated.

Plaintiff's testimony makes clear that although he fell to the ground when Dandrea shoved him, that was mostly because Dandrea's act was "totally unexpected," and caused plaintiff to lose his balance. Even viewing the record in the light most favorable to plaintiff, this was nothing more than a "push or shove," and it was certainly not "of a sort repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 10 (1992). *See*, *e.g.*, Perry v. Stephens, ___ F.Supp.2d ___, 2009 WL 3049589, at *4 (S.D.N.Y. 2009) (inmate's allegation that officer "slapped [plaintiff] several times across the face ... and began choking" him before other officers pulled him away did not state Eighth Amendment claim, where the harm described by plaintiff, which consisted of a "slight bruise ... on the side of [his] face," pain from that bruise that lasted "a couple of days" or "about four days," and pain from the choking that lasted several hours and that did not require medical treatment, was "not sufficiently serious or harmful to 'reach constitutional dimensions'") (quoting *Romano v.*

*Howarth*, 998 F.2d 101, 105 (2d Cir. 1993)); *Excell v. Fischer*, No. 08-CV-945, 2009 WL 3111711, at *7 (N.D.N.Y. Sept. 24, 2009) (plaintiff's "claim that [officer] pushed him against a rail, even if true, is *de minimis* and therefore fails to state a claim"); *James v. Phillips*, No. 05 Civ. 1539, 2008 WL 1700125, at *4-*5 (S.D.N.Y. Apr. 9, 2008) (finding *de minimis* use of force when prison guard shoved inmate into a door, resulting in swelling of inmate's chin); *Gonzalez v. Coughlin*, No. 92 Civ. 7263, 1996 WL 496994, at *4-*5 (S.D.N.Y. Aug. 21, 1996) (finding no excessive use of force where plaintiff alleged that correction officers tripped him to the ground and hit him in the knee).

Dandrea's alleged yelling or screaming in plaintiff's face also fails to give rise to a cognizable claim under § 1983. Verbal harassment alone will generally not violate an inmate's constitutional rights. *See Greene v. Mazzuca*, 485 F.Supp.2d 447, 451 (S.D.N.Y. 2007) ("Accepting as true Greene's allegations that he was yelled and spit at, and threatened with time in the SHU, none of these actions rise to the level at which prevailing doctrine sets the constitutional bar to establish cruel and usual punishment in this regard"); *Aziz Zarif Shabazz v. Pico*, 994 F.Supp. 460, 474 (S.D.N.Y. 1998) (finding no constitutional violation by even the most reprehensible verbal harassment or profanity).

### IV. Plaintiff's Motion to Amend

Plaintiff has filed a motion (Dkt. #50) in which he states, "I was informed that I did not include all defendants on the face of my complaint, although I included some defendants in the body." Plaintiff requests that he be allowed to "amend [his] complaint to properly reflect all

defendants on its face." Plaintiff has since filed another document (Dkt. #54) essentially repeating that request.

Plaintiff's motion is denied without prejudice. It is not clear what defendants plaintiff is referring to or precisely how he seeks to amend his complaint. If plaintiff wishes to seek leave of court to amend the complaint, he should submit a new proposed amended complaint, and his moving papers should explain the basis for, and nature of, the proposed amendment, to allow the Court to determine whether the proposed amendment would be in the interest of justice. Fed. R. Civ. P. 15(a). *See La Barbera v. Ferran Enterprises, Inc.*, No. CIV. A. 06-2678, 2009 WL 367611, at *3 (E.D.N.Y. Feb. 10, 2009) ("In order to meet the requirements of particularity in a motion to amend, a complete copy of the proposed amended complaint must accompany the motion so that both the Court and the opposing party can understand the exact changes sought") (internal quotation marks omitted).

## CONCLUSION

The motion for summary judgment brought by defendants Goord, Wright, Bryan and Dandrea (Dkt. #51) is granted in part and denied in part. The motion is granted as to defendants Goord, Wright and Dandrea, and plaintiff's claims against those defendants are dismissed in their entirety. In all other respects, the motion is denied.

Plaintiff's motions for leave to amend or correct the complaint (Dkt. #50, #54) are denied without prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
January 7, 2010.